UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christina D.,[1]

    Plaintiff,

v.

Martin J. O'Malley,
*Commissioner of Social Security Administration*,

    Defendant.

Case No. 23-cv-3640 (DJF)

**ORDER**

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Christina D. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. Because substantial evidence supports the Decision, the Court denies Plaintiff's request for relief (ECF No. 13), grants Defendant's request for relief (ECF No. 16), and dismisses this matter with prejudice.

**BACKGROUND**

**I.    Plaintiff's Claim**

    Plaintiff applied for SSI on October 15, 2021, and DIB on October 18, 2021. (Soc. Sec. Admin. R. (hereinafter "R.") 212-223, 227-233.)[2] At that time she was 41-years old with a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The Social Security administrative record (R.) is filed at ECF No. 7. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers in citing to the Administrative Record. All other citations refer to ECF docket and page numbers.

Graduate Equivalency Degree and prior work experience at a call center. (R. 251, 261.) Plaintiff alleged she became disabled on September 23, 2020 (R. 212, 227), resulting from long COVID-19, memory loss, fibromyalgia, chronic fatigue syndrome, mild cognitive delay, depression, and anxiety (R. 260).

**II.    Regulatory Background**

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20

C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 416.920(a)(4)(iii).[3]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

### III. Procedural History

The Commissioner denied Plaintiff's applications for DIB and SSI initially (R. 109-113, 114-118) and on reconsideration (R. 129-133, 139-141).  On March 23, 2023, at Plaintiff's request (R. 142-143), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications (R. 36-64).  Plaintiff and a vocational expert testified at the hearing.  (R. 36-37.)  Plaintiff was represented by an attorney.  (R. 36.)

After the hearing, the ALJ determined that Plaintiff has non-severe sleep apnea and multiple physical and mental impairments, which at least in combination are severe: post COVID syndrome; fibromyalgia; postural orthostatic tachycardia syndrome; asthma; mild hallux valgus

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

deformity, right foot; attention deficit disorder; isolated memory impairment; unspecified mild cognitive disorder; generalized anxiety disorder; recurrent, moderate major depressive disorder; and obesity.  (R. 20.)  The ALJ found Plaintiff has moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace; and mild limitations in interacting with others and adapting or managing herself.  (R. 20-21.)  But the ALJ found Plaintiff's mental impairments do not severely limit any area of broad functioning.  (R. 20-21.)  The ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing.  (R. 20-22.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 22-29) and determined that Plaintiff has:

> the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant can stand or walk up to four hours and sit up to six hours in and [sic] eight-hour workday; she can frequently climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently handle, finger, and feel with the bilateral upper extremities. She requires the ability to alternate between sitting and standing every thirty minutes for one to two minutes in the immediate vicinity of the workstation; she can never be exposed to concentrated levels of fumes, odors, dusts, gases, poor ventilation, or other pulmonary irritants. She can never be exposed to hazards such as moving machinery or unprotected heights. She can perform simple, routine, and repetitive tasks, but not at a production-rate pace (so, for example, no assembly line work).

(R. 22.)

Next, the ALJ found Plaintiff had past relevant work as: (1) a "Data Entry Clerk" (DOT #203.582-054, semi-skilled, at specific vocational preparation ("SVP") SVP level 4, which was sedentary per the DOT and sedentary as actually performed); (2) a "Customer Service Supervisor" (DOT #241.137-014, skilled, at SVP level 6, which was sedentary per the DOT and light as actually performed); and (3) a "Customer Support Technician" (DOT #241.367-014, skilled, at SVP level 5, which was sedentary per the DOT and sedentary as actually performed).

(R. 29.) The ALJ then determined that Plaintiff is unable to perform her past relevant work because each position exceeds her RFC. (R. 29.)

The ALJ next evaluated whether Plaintiff can perform any other jobs that exist in significant numbers in the national economy. (R. 29-30.) Based the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is able to perform such other jobs, including: (1) "Addressing Clerk" (DOT #209.587-010, at SVP level 2, with approximately 155,000 jobs in the national economy); (2) "Document Preparer" (DOT #249.587-018, at SVP 2, with approximately 245,000 jobs in the national economy); and (3) "Touch Up Screener" (DOT #726.684-110, at SVP 2, approximately 110,000 jobs in the national economy). (R. 30.) The ALJ concluded on that basis that Plaintiff is not disabled. (R. 30-31.) The Appeals Council denied Plaintiff's request for review of the ALJ's Decision (R. 1-6), and this lawsuit followed.

## DISCUSSION

### I.     Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

5

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

**II.    Analysis**

Plaintiff argues the ALJ's RFC determination is flawed because the ALJ improperly discounted Dr. Felix Lai's medical opinion, in part by failing to address its supportability and consistency with the record. (ECF No. 13 at 10-14.) She contends, "the ALJ substituted her own evaluation of the medical evidence for that of a trained medical professional." (*Id.* at 14.) Plaintiff argues the error is not harmless because it affected the hypothetical questions the ALJ asked the vocational expert and the ALJ's ultimate conclusion that Plaintiff can perform work that exists in significant numbers in the national economy. (*Id.* at 14-15.) Plaintiff asks the Court to remand this matter for further proceedings before the Commissioner on these grounds. (*Id.* at 15-16.)

Defendant argues that the ALJ applied proper legal standards and that substantial evidence supports her findings. He asks the Court to affirm the Decision accordingly. (ECF No. 16 at 1.)

RFC is defined as the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). It is the claimant's burden to prove her functional limitations related to her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).

As part of an RFC determination, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, [and] (2) whether they are consistent with other medical sources …." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). But "[n]o talismanic language is required for the ALJ to meet the requirements of [section] 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*, No. 21 CV 2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023). Moreover, under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources. 20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th at 875 (citing 20 C.F.R. § 404.1520c(a), "treating physicians are [no longer] entitled to special deference").

7

The ALJ in this case cited extensive evidence to support her RFC determination, including Dr. Lai's treatment notes. (*See, e.g.*, R. 22-29.) The ALJ observed that: (1) Plaintiff was diagnosed with COVID-19 in September 2020, after which she experienced musculoskeletal pain, fatigue, and brain fog, but as of December 2021, the fatigue was improved with coffee, she was able to walk her dog and take care of her toddlers, and medication improved her mood but not her pain (R. 24, citing R. 593-599); (2) in February 2021, Plaintiff's treatment providers described her as a mother with a busy lifestyle (R. 24, 27, 28, citing R. 672-673, 676); (3) in March 2021, Dr. Lai reported that Plaintiff experienced significant improvement in her pain after starting new medications and was tolerating the medications without side effects (R. 28, citing R. 666; *see also* R. 26, citing R. 593, 595, 666, medical records showing medication tolerance without side effects); (4) in May 2021, Dr. Lai reported that although walking during a recent vacation caused Plaintiff to experience pain in her legs, medication helped relieve her pain and she was functioning in other areas (R. 28, citing R. 651); (5) in June 2021, another treatment provider reported that Plaintiff was her mother's caregiver (R. 28, citing R. 537); and (6) sometime before February 2022, Plaintiff attended a class on fibromyalgia and chronic fatigue (R. 28, citing R. 906-907).

In March 2023, Plaintiff's treating physician, Dr. Lai, completed a Fibromyalgia Residual Functional Capacity Questionnaire that Plaintiff's attorney provided to him. (R. 1421-1427.) Dr. Lai completed much of the form by using checkmarks, or circling "yes" or "no". (R. 1421-1426.) Dr. Lai indicated that Plaintiff's "diagnosed impairments" included chronic fatigue syndrome, fibromyalgia, and cognitive decline, which was possibly related to Covid-19, and that Plaintiff had widespread, "every day" pain throughout her body, rated 5-7/10 in severity, with tender points and elevated inflammatory markers. (R. 1421-1422.) He checked that changing weather, fatigue, stress, cold, and both movement/overuse and static position all precipitated Plaintiff's pain.

8

(R. 1423.) Dr. Lai circled "frequently" to indicate how often Plaintiff's symptoms interfered with her attention and concentration, and circled "severe limitation" to indicate Plaintiff's ability to handle work stress. (R. 1423.) He also stated that Plaintiff suffered side effects from medication, including dizziness and drowsiness, which affect her ability to work. (R. 1423.) Dr. Lai indicated that Plaintiff could walk one block without rest, circled that she could sit for just five to ten minutes and stand for ten minutes continuously at one time, and checked that she could sit and stand/walk for less than two hours in an eight-hour workday. (R. 1423-1424.) He also indicated that Plaintiff would require a ten-minute break every thirty minutes during an eight-hour workday, and absences from work more than three times per month. (R. 1424, 1426.) Finally, Dr. Lai checked that Plaintiff could "occasionally" lift less than ten pounds, stated that she could bend and twist less than 5% during an eight-hour workday, and circled "yes" to indicate her impairments were likely to produce "good days" and "bad days." (R. 1424-1425.) Dr. Lai did not cite any specific treatment notes or provide detailed explanations to support his opinion. (R. 1421-1426.)

The ALJ's Decision noted that Dr. Lai had completed a medical source statement for Plaintiff, that he was her primary care physician, and that he had been seeing her every three months. (R. 28.) Though the ALJ considered Dr. Lai's opinion, she did not find it entirely persuasive. She stated:

> Dr. Lai's own notes indicate the claimant's pain is improved significantly with medication (3F/79). His notes also indicate the claimant traveled to Las Vegas although her pain was worse with walking, the claimant was clearly functioning outside of these limitations (*Id.* at p 64). In addition, other evidence describes the claimant as a busy mother of three children with a busy lifestyle (*Id.* at pgs. 85, 86). She spent time taking care of her mother (2F/44). The claimant was able to complete a fibromyalgia and chronic fatigue class (5F/5). The evidence supports improvement in the claimant's condition and greater functioning than Dr. Lai suggests. Therefore, this opinion is less persuasive.

(R. 28.) An ALJ may appropriately discount a treating physician's assessment when, as in this

9

case, it includes "vague, conclusory statements-checked boxes, circled answers, and brief fill-in-the-blank responses." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Moreover, the ALJ considered Dr. Lai's treatment history with Plaintiff, but cited Dr. Lai's own treatment notes to reasonably find they did not support the degree of limitation he identified in his opinion (R.26, 28, citing R. 593, 595, 651, 666; Dr. Lai's notes showing medication helped improve Plaintiff's symptoms and broad overall functioning without side effects, including her ability to travel). Having evaluated the supportability of Dr. Lai's opinion, the ALJ also cited other evidence in the record that was inconsistent with the degree of limitations Dr. Lai recommended. (R. 24, 27, 28, citing R. 537, 672-673, 676, 906-907, treatment notes describing Plaintiff as a mother with a busy lifestyle, able to care for her own mother, and able to complete a class on fibromyalgia and chronic fatigue.) The ALJ's Decision thus included her analysis of both the supportability and consistency of Dr. Lai's opinion and cited substantial evidence to support the ALJ's finding that it was "less persuasive."

Plaintiff contends the ALJ failed to build a "logical bridge" between the facts she cited and her conclusions regarding Dr. Lai's opinion, in part by omitting certain parts of the record and improperly evaluating others. (ECF No. 13 at 12-13.) Essentially, Plaintiff asks the Court to reweigh the evidence, but that is not the Court's job. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). Moreover, the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). Because the ALJ properly evaluated Dr. Lai's opinion, including

its supportability and consistency under 20 C.F.R. § 404.1520c(c), and substantial evidence supports her findings, the Court must affirm. *Perks*, 687 F.3d at 1091.

The Court further rejects Plaintiff's contention that the ALJ erred by "substitute[ing] her own evaluation of the medical evidence for that of a trained medical professional." (*See* ECF No. 13 at 14.) It is the ALJ's job to weigh all the relevant medical and non-medical evidence in the record; she is not bound by any single medical professional's opinion. 20 C.F.R. § 404.1545(a)(3); *see also Hensley*, 829 F.3d at 932 ("[T]here is no requirement that an RFC finding be supported by a specific medical finding.") Here, the ALJ properly considered Dr. Lai's opinion, together with other medical and non-medical evidence in the record. She did not err by properly exercising her role as the final arbiter of Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3). And because the ALJ did not err by failing to include the limitations Dr. Lai opined were necessary, the hypothetical questions she posed to the vocational expert were appropriate. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996) (a hypothetical question posted to a vocational expert need include only those impairments that the ALJ has found are substantially supported by the record as a whole).

For the foregoing reasons, the Court finds no basis to grant the relief Plaintiff seeks and affirms the ALJ's Decision.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff's Request for Relief (ECF No. [13]) is **DENIED**;
2. Defendant's Request for Relief (ECF No. [16]) is **GRANTED**; and
3. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 2, 2024 *s/ Dulce J. Foster*
DULCE J. FOSTER
United States Magistrate Judge